**FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN MURRAY, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 08-2672 (WHW) |
| | : | |
| CRYSTEX COMPOSITES LLC, | : | |
| | : | |
| Defendant | : | |
| | : | |

**Walls, Senior District Judge**

Defendant Crystex Composites LLC moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

This case originates from the purchase out of bankruptcy of a division of Spaulding Composites Company, Inc., Mykroy/Mycalix ("M&M"), that manufactured glass and ceramic electronic components. See Flores v. Murray, 2007 WL 3034512 (N.J. Super. App. Div. 2007).

In 2001, Spaulding filed for bankruptcy in the District of New Hampshire and hired plaintiff John Murray as a consultant accountant to review M&M. During the course of his work, Murray developed a friendship with a longtime M&M manager, George Flores. See Flores v. Murray at *1. Murray became interested in purchasing the unit and, after notifying Spaulding's creditors committee that he had concluded that M&M was a valuable asset, took steps toward purchasing it out of bankruptcy. (See Def.'s Opp'n 3-5.) Murray submitted a bid for M&M to the bankruptcy court, which rejected the bid but suggested that Murray make an

FOR PUBLICATION

offer directly to one of Spaulding's main creditors, CIT.  (See id. at 4-5.)  Ultimately, CIT agreed

to sell M&M to Murray for $764,000.  (See id. at 5.)

Murray, together with Flores, began to assemble a group of investors who would become

the equity owners of defendant Crystex, to which the M&M Assets would be transferred.  See

Flores v. Murray at *1.  Flores, Murray and a longtime friend of Murray's, Larry Milby, each

agreed to contribute $200,000.  Milby's niece agreed to contribute another $100,000.  See id.

The balance of the purchase price, $264,290.50, was to be funded by a loan from CIT, secured by

pledges of stock held by Murray and Milby in American Bio Medica Corporation ("ABMC").

See id. at *2.

Because Flores was concerned that the group did not have enough money in reserve for

operations, he engaged three additional investors: Keith Savel, Howard Zimmerman and David

See, who agreed to invest collectively $150,000 for a 10% interest in Crystex.  See id. at *2-3.

At the outset, Flores contributed his $200,000 and Milby $190,000 but Murray failed to

make a contribution.  See id. at *2.  Murray's justification for this failure was that his ABMC

stock was "going to go through the roof" and it would be foolish to sell it before it increased in

value.  See id.  When Savel, Zimmerman and See discovered that Murray would not be

contributing $200,000 immediately, they insisted that Murray have some other personal liability.

See id. at *2.  The parties entered a memorandum of understanding, dated October 14, 2003,

providing that Murray would contribute $200,000 within six months or "forfeit his shares and

ownership in Crystex."  See id. at *3.  A certificate of formation for Crystex was filed on October

15, 2003.  (See Pl.'s Supp., Ex. E.)

Spaulding moved in the bankruptcy court for authority to sell the real estate and business

-2-

FOR PUBLICATION

assets of M&M (the "M&M Assets") and, by an order dated October 15, 2003, the bankruptcy

court granted Spaulding the authority to sell all of the M&M assets to "John F. Murray, or his

nominee" for $764,290.50 on terms similar to those of a form purchase agreement attached to the

order of the bankruptcy court.  (See Def.'s Supp., Ex. D.)  None of these documents identified

Crystex as the buyer.

Murray hired an attorney, Ken Wanio, who prepared contracts for the sale of the M&M

Assets, incorporated Crystex and dealt with Spaulding and CIT.  (See Certification of John

Murray in Opp'n to Mot. for Summ. J. ¶ 33 ("Murray Cert.").)  Murray certifies that Wanio's

authority was based on his understanding that Murray "would receive 35.75% of Crystex and

would be the Managing Member."  (See id. at ¶ 34.)

On October 23, 2003, Murray signed a resolution authorizing Crystex to purchase the

M&M Assets but did so as the Managing Member of Crystex.  (See Def.'s Supp., Ex. F.)  Wanio

later prepared a deed and bill of sale transferring ownership of M&M from Spaulding directly to

Crystex. (See  Def.'s Supp., Exs. G & H.)  Murray claims that he did not direct Wanio to prepare

these documents and that he did not object only because he believed he was the largest equity

owner in Crystex.  (See Murray Cert. ¶ 35.)  There is no evidence that Murray expressly

identified a nominee.  (Pl.'s Opp'n. 6.)

Shortly after the purchase of the M&M Assets, Flores became concerned with Murray's

performance.  Murray had "refused to honor a financial obligation owed to one of the company's

manufacturing representatives, wanted to penalize valued customers, and used offensive

language when dealing with a Crystex accounts payable clerk."  Flores v. Murray at *5.  Flores

discovered that Murray had been paying an additional, unauthorized salary to his son, who was

-3-

FOR PUBLICATION

employed by Crystex in the synthetic mica department, out of the Crystex operating account.  See
id.  Certain checks to employees of Crystex bounced because Murray had failed to transfer funds
from the operating account to the payroll account.  See id.  Finally, Murray had paid a personal
debt out of company funds.  See id.

At the same time, Murray still had not contributed his $200,000.  See id.  On May 3, 2004
Flores called a special meeting and with the other members of Crystex voted that Murray had
"failed to live up to his obligations and that he no longer had an interest in Crystex."  Flores v.
Murray at *6.  The members filed a complaint in the Superior Court of New Jersey, Flores et al.
v. Murray, seeking, inter alia, a declaratory judgment that "due to Murray's failure to comply
with his contractual obligations ... Murray never had any ownership interest in Crystex, or in the
alternative ... [d]eclaring that as of the [special meeting] Murray had no ownership interest in
Crystex ... [and] that Murray [was] not entitled to any compensation for his forfeit [sic] interest in
Crystex."  (Pl.'s App. at MA000005; Sup. Ct. of N.J., Dkt. No. L-769-05 (filed Feb. 18, 2005).)
Crystex did not immediately join this suit,  (Pl.'s Opp'n. 10.), but Murray later joined Crystex as
a third-party defendant.  (Pl.'s App. at MA000020.)

The superior court held that Murray had violated his contractual obligation to contribute
$200,000 and had fraudulently induced the other investments by promising that he would
contribute his $200,000 at a later date.  (See Pl.'s App. MA000063-80; Flores v. Murray, No. L-
769-05 (N.J. Super. Ct. Law Div. 2006) ("Trial Court Transcript").)  The trial court was
"satisfied that the investment group [was] entitled to enforce the forfeiture clause" of the
memorandum of understanding.  According to the trial court, if Murray "did not come up with
the $200,000, he suffered the possibility of losing his interest" in Crystex.  (Pl.'s App. at

-4-

FOR PUBLICATION
MA000077; Trial Court Transcript at 224.)

The trial court added, "[w]hat is important here is that there's a total failure of consideration.  He never paid the money, he never sold his stock, he never subjected his own capital to the risk of a new company."  Id.  The court was "satisfied that Mr. Murray never acquired a membership interest in Crystex.  And any interest of his is therefore void.  Any interest of Murray in the ownership of Crystex is null and void and his shares are forfeited."  Id.

The Appellate Division upheld the trial court's judgment that the memorandum of understanding controlled and that Murray had forfeited his interest in Crystex by failing to contribute the $200,000 but reversed the trial court's judgment that Murray had fraudulently induced the investors to invest in Crystex.  See Flores v. Murray at *11.  According to the Appellate Division, a fair reading of the memorandum of understanding, coupled with the credible testimony, indicated it "personally obligate[d] [Murray] to 'contribute the $200,000 investment within a six month period ending in March of 2004 or forfeit his shares and ownership in Crystex.'"  Id. at *10 (internal citations omitted).

The Appellate Division further observed,

[i]n consideration for [Murray's] contribution, the remaining parties agreed to contribute their capital investments so that M & M could be purchased and each party, including [Murray], could receive an ownership interest in the soon-to-be-formed Crystex. The testimony at trial established that the [Savel, Zimmerman and See] would not have risked an investment in Crystex without [Murray's] capital contribution had defendant refused to agree to the terms of the [memorandum of understanding]. They accepted the risk of contributing capital investments without a present contribution by [Murray] in order to form Crystex in exchange for [Murray's] promise to contribute his investment by the end of March 2004 or forfeit his ownership interest. The judge correctly found that there was mutual consideration and the [memorandum of understanding] was enforceable.

Id. at *10.  The Appellate Division adopted the trial court's conclusion that "there's a total failure

FOR PUBLICATION

of consideration" and Murray "never acquired a membership interest in Crystex."  Id. at *11

(quoting Flores v. Murray, No. L-769-05 at 224).  The New Jersey Supreme Court denied

Murray's petition for certification on January 24, 2008.  (Def.'s Statement of Material Facts Not

in Dispute ¶ 12.)

Murray filed the present complaint on May 27, 2008, claiming that the order of the

bankruptcy court granted him ownership of the M&M assets.  Murray claims that, had he known

at the time of the transaction with Spaulding that he was not an equity owner of Crystex, he

would have objected to the transfer.  (See Pl.'s Opp'n. 9.)  By Count One, Murray seeks a

declaratory judgment "establishing that Murray is the legal owner of the real estate and personal

property awarded to him by [the order of the bankruptcy court.]"  (See Compl. ¶¶ 27-30.)  In

Count Two, Murray claims Crystex has been unjustly enriched by its unlawful possession of the

M&M assets.  (See Compl. ¶¶ 31-32.)    And in Count Three, Murray claims misappropriation of

the M&M Assets by Crystex.  (See Compl. ¶¶ 33-34.)

Defendant moves for summary judgment on two grounds.  First, defendant argues that

plaintiff's claims are procedurally barred by the New Jersey state court judgments under either

the entire controversy doctrine,[1] res judicata or collateral estoppel.  Alternatively, defendant

proposes that plaintiff's claim should be dismissed because Murray never purchased an interest

in the M&M Assets and, even if he had, he appointed Crystex as his nominee.  Because the Court

---

[1]Plaintiff conceded at oral argument that the procedural law of New Jersey, including the entire controversy doctrine, applied in this case.  See Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30, 290 F.3d 567, 572-73 (3d Cir. 2002) (Full Faith and Credit Act requires that state court decisions be given "the same preclusive effect in federal court they would be given in the courts of the rendering state"); see also 28 U.S.C. § 1738.

FOR PUBLICATION

concludes that the entire controversy doctrine bars plaintiff's claims it need not address

defendant's other arguments.

### LEGAL STANDARD

The entire controversy doctrine is often defined by comparison to claim preclusion so a

brief discussion of traditional res judicata claim preclusion is helpful.

#### *Claim Preclusion*

Traditional claim preclusion provides that when a court of competent jurisdiction has

entered a final judgment on the merits of a cause of action, the parties to the suit and their privies

are thereafter bound "not only as to every matter which was offered and received to sustain or

defeat the claim or demand, but as to any other admissible matter which might have been offered

for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 24 L. Ed. 195 (1877).  The bar of

claim preclusion applies "not only to 'all matters litigated and determined by such judgment but

also as to all relevant issues which could have been presented, but were not.'"  Culver v.

Insurance Co. of N. Am., 115 N.J. 451, 463, 559 A.2d 400, 406 (1989) (quoting Anselmo v.

Hardin, 253 F.2d 165, 168 (3d Cir. 1958)).

Under both federal and New Jersey law, claim preclusion requires "(1) the judgment in

the prior action must be valid, final, and on the merits; (2) the parties in the later action must be

identical to or in privity with those in the prior action; and (3) the claim in the later action must

grow out of the same *transaction or occurrence* as the claim in the earlier one."  McNeil v.

Legislative Apportionment Comm'n, 177 N.J. 364, 395, 828 A.2d 840 (2003) (emphasis added);

see also Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (1991); Culver, 115 N.J. at 460-63,

559 A.2d at 404-406 (applying the federal claim preclusion standard).

FOR PUBLICATION

In determining if a claim arises from the same "transaction or occurrence," the Third

Circuit has looked for the "essential similarity of the underlying events giving rise to the various

legal claims."  Lubrizol, 929 F.2d at 963 (quoting Davis v. United States Steel Supply, 688 F.2d

166, 171 (3d Cir. 1982) (en banc), cert. denied, 460 U.S. 1014, 103 S. Ct. 1256 (1983)); see also

United States v. Athlone Indus., Inc., 746 F.2d 977, 983-84 (3d Cir. 1984).  The proper focus is

"whether the acts complained of were the same, whether the material facts alleged in each suit

were the same and whether the witnesses and documentation required to prove such allegations

were the same." Athlone, 746 F.2d at 984.

### Entire Controversy Doctrine

The entire controversy doctrine "reaches more broadly than the 'same cause of action'

requirement of traditional res judicata'" claim preclusion.  Lubrizol, 929 F.2d  at 965 (quoting

Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986)).  A party must bring "all *related* claims

against a particular adversary" or be barred from bringing a later action based on such claims.  In

re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008) (quoting Melikian, 791 F.2d at 279) (emphasis

added); see also Lubrizol, 929 F.2d  at 965 (citing Cogdell v. Hospital Center at Orange, 116 N.J.

7, 560 A.2d 1169 (1989)).  This doctrine is codified in the New Jersey Court Rules, which

provide that "[n]on-joinder of claims required to be joined by the entire controversy doctrine

shall result in the preclusion of the omitted claims to the extent required by the entire controversy

doctrine."  New Jersey Court Rules, R. 4:30A (2009).

> "The test for whether claims are 'related' such that they must be brought in a single action
> under New Jersey entire controversy doctrine . . . [is] as follows: if parties or persons
> will, after final judgment is entered, be likely to have to engage in additional litigation to
> conclusively dispose of their respective bundles of rights and liabilities that derive from a
> single transaction or related series of transactions, the omitted components of the dispute

FOR PUBLICATION

> or controversy must be regarded as constituting an element of one mandatory unit of litigation."

DiTrolio v. Antiles, 142 N.J. 253, 268, 662 A.2d 494, 502 (1995) (citing O'Shea v. Amoco Oil Co., 886 F.2d 584, 590-91 (3d Cir. 1989)).  "Under the entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." In re Mullarkey, 536 F.3d at 229 (citing Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999)); but see Fornarotto v. American Waterworks Co., 144 F.3d 276, 280 (3d Cir. 1998) (entire controversy doctrine does not apply when two causes of action do not have sufficient commonality).

The doctrine aims to "assure that all aspects of a legal dispute occur in a single lawsuit," Olds v. Donnelly, 150 N.J. 424, 431 696 A.2d 633, 637 (1997), and strives for three goals: "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." In re Mullarkey, 536 F.3d at 229 (citing Paramount Aviation, 178 F.3d at 137 (citing DiTrolio, 662 A.2d at 502))).

Fairness and equity underpin both the entire controversy doctrine and traditional claim preclusion.  Preclusion is generally disfavored, see Olds, 150 N.J. at 446, but the doctrine is flexible and is to be applied case-by-case with an appreciation of fairness to the parties.  See In re Mullarkey, 536 F.3d at 229 (citing Paramount Aviation, 178 F.3d at 137).  "New Jersey's application of the entire controversy doctrine 'emphasizes the essential unfairness of forcing parties and courts to rerun a course previously run.'" Fields v. Thompson Printing Co., 363 F.3d 259, 266 (quoting Joel v. Morrocco, 147 N.J. 546, 688 A.2d 1036, 1040 (1997)); see also Mocci v. Carr Engineering Assoc., 306 N.J. Super. 302, 308, 703 A.2d 686, 689 (App. Div. 1997) (refusing to apply the entire controversy doctrine because preclusion would have been "utterly

-9-

**FOR PUBLICATION**

inconsistent with any reasonable concept of fairness").

Accordingly, the doctrine does not bar claims that are "unknown, unarisen, or unaccrued at the time of the original action." Mocci, 703 A.2d at 688 (quoting Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995) (overruled by Olds, 696 A.2d at 642)); see also In re Mullarkey, 536 F.3d 215 (3d Cir. 2008) (overturning district court's application of the entire controversy doctrine to a suit alleging fraud in the course of a foreclosure proceeding because claim may not have accrued or been justiciable in the foreclosure proceeding).

Whether a claim is "unknown, unarisen or unaccrued" turns on the knowledge or constructive knowledge of the party who could have brought the claim. As example, the Mocci plaintiff, a real estate developer, had agreed to purchase a parcel of land and hired the defendant, an engineer, to conduct soil analysis. See Mocci, 703 A.2d at 687. The engineer mistakenly reported that wetlands were present on the parcel. Because the presence of wetlands on the parcel would significantly diminish its value, the developer canceled the contract. See id. Litigation with the seller of the parcel ensued. At trial, the seller's experts testified that the engineer had been negligent. This testimony was contradicted by the developer's witnesses. After prevailing in the suit, the developer learned that the engineer had in fact been negligent and no wetlands were present on the parcel. The developer brought suit against the engineer for negligence. See id. The Law Division concluded that the negligence claim arose out of the same transaction as the earlier litigation and was barred by the entire controversy doctrine. See id. at 687. The Appellate Division reversed, holding that the claim against the engineer was not barred because information from opponent parties or opponent expert witnesses did not provide constructive notice that a party must join his own expert witness as a defendant.

-10-

FOR PUBLICATION
See id. at 688-89.

**DISCUSSION**

Here, plaintiff failed to assert his claims to ownership of the M&M Assets in the earlier

proceedings.  It is obvious that such claims arose from the same series of transactions as the

transactions underlying the New Jersey proceedings.  It is of no moment that Crystex was not

joined at the outset because the entire controversy doctrine is not limited to the outset of a matter.

Plaintiff here, defendant there, asserted six claims against Crystex as a third-party defendant.[2]

(See Pl.'s App. MA000035-46.)  It was unreasonable for Murray to fail to assert his claim to

ownership of the M&M Assets then.  It is also irrelevant that Crystex itself did not join in the

members' request for a declaratory judgment that Murray never held an equity interest.  Crystex

was a party and Murray was on notice, by the pleadings of the members, that he could be found

to not have been an equity member of Crystex.  In contrast to other doctrines of preclusion, under

the entire controversy doctrine, parties are required to assert all claims related to the same series

of transactions, not just those which will defeat the claim against them.

The entire controversy doctrine required Murray to assert his claim to ownership of the

M&M Assets unless they were "unknown, unarisen or unaccrued" at the time of the first

proceeding. Murray's argument that his claim had not accrued is weakened by the Third Circuit's

observation that

> "[if] the litigants in the action as framed will, after final judgment therein is entered, be
> likely to have to engage in additional litigation in order to conclusively dispose of their
> respective bundles of rights and liabilities which derive from a single transaction or
> related series of transactions, then the omitted component must be regarded as
> constituting an element of the minimum mandatory unit of litigation."

---

[2]Murray's claims included breach of the Crystex operating agreement, breach of his
employment contract, breach of implied covenant of good faith and fair dealing, unjust
enrichment, common law and statutory oppression and civil conspiracy.

FOR PUBLICATION

Melikian v. Corradetti, 791 F.2d 274, 279-80 (3d Cir. 1986) (quoting Wm. Blanchard Co. v.

Beach Concrete Co., 150 N.J. Super. 277, 293-94, 375 A.2d 675, 683-84 (App. Div. 1977), cert.

denied 75 N.J. 528, 384 A.2d 507 (1977).  Certainly, additional litigation was more than likely.

Plaintiff knew that a finding that he never held an interest would require him to assert his

ownership rights in the M&M assets in a later matter.  The entire controversy doctrine requires

the parties to do more than simply respond to the claims of their adversaries.  A party cannot

neglect to assert a claim clearly related to the subject matter of the litigation simply because an

opposing party asserts its claim in the alternative.

       Plaintiff's argument that his unjust enrichment claim had not accrued in the earlier

proceeding is equally unavailing.  To prove unjust enrichment a party must show "it expected

remuneration from the defendant at the time it performed or conferred a benefit on defendant."

VRG Corp. v. GKN Realty Corp., 135 NJ. 539, 554, 641 A.2d 519, 526 (1994).  Plaintiff

correctly observes that the common thread is "that the plaintiff expected remuneration from the

defendant, or if the true facts were known to plaintiff, he would have expected remuneration

from defendant, at the time the benefit was conferred."  Associates Commercial Corp. v. Wallia,

211 N.J. Super. 231, 244, 511 A.2d 709, 716 (App. Div. 1986).  Plaintiff insists he could not

have received restitution for the purported unjust enrichment until the true facts at the time of the

transaction were revealed, that is, until it was determined that he never held an equity interest.

But plaintiff had notice that the trial court might determine that he never held an equity stake.

Given that notice, the entire controversy doctrine required plaintiff to assert his claim to

ownership of the M&M Assets.

       This is not a case where plaintiff's claim would not accrue until after proceedings were

completed.  See, e.g., Olds at 437 (legal malpractice claim not barred by entire controversy

**FOR PUBLICATION**

doctrine because client must have been injured and injury requires prejudicial outcome).

Murray's purported damages occurred not during the trial but at the time of the transaction.  To

resay, Murray's failure to assert his claim meant that, after a final judgment, it was likely that the

parties would "have to engage in additional litigation to conclusively dispose of their respective

bundles of rights and liabilities" that derived from the purchase of M&M.  See DiTrolio, 662

A.2d at 502.

Plaintiff insists that no judicial economy would have been served by resolving ownership

in the earlier trial because "Murray would have been required to speculate about the potential

consequences of all of the possible outcomes of the case."  (Pl.'s Opp'n at 23.)  According to

plaintiff, to punish him for failing to assert his ownership claim would violate the twin pillars of

the entire controversy doctrine: fairness to the parties and fairness to the system of judicial

administration.  Plaintiff entreats that, unlike other cases where courts have applied the entire

controversy doctrine to bar claims, his was not a deliberate claim-splitting strategy.

Although, plaintiff is both correct that the polestar of the entire controversy doctrine is

fairness, see K-Land Corp. No. 28 v. Landis Sewage Auth., 173 N.J. 59, 74, 800 A.2d 861, 871

(2002), and that many of the leading cases imposing a procedural bar under the entire controversy

doctrine involved parties who strategically withheld claims, See K-Land, 800 A.2d 861 at 868

(discussing relevant cases), strategic behavior is not a prerequisite to imposition of the procedural

bar.   While strategic behavior might indicate that a party who failed to assert a related claim in

an earlier action could have asserted such claim and could gird a conclusion that justice favors

barring such claims, the inquiry still focuses on whether a claim was "unknown, unarisen or

unaccrued."

K-Land is illustrative of this point.  In K-Land the City of Vineland sought a declaratory

-13-

FOR PUBLICATION

judgment to establish ownership of a sewer main installed by K-Land, joining K-Land and

several other parties who intended to use the sewer main.  See K-Land, 800 A.2d at 863.  K-Land

had no interest in ownership of the main, although it did have an outstanding concern as to how

the parties to the suit would compensate it for the cost of constructing the sewer main.  Because

K-Land believed that the pending suit involved only ownership of the main it did not respond to

the suit.  Default was entered against K-Land.  The other parties later entered a consent judgment

which affected K-Land's reimbursement for costs.  See id. at 865-66.  K-Land instituted an

action against the parties to the consent judgment seeking reimbursement.  See id. at 865.  The

trial court dismissed K-Land's suit, applying the entire controversy doctrine.  See id. at 867.  The

Appellate Division affirmed, concluding that, because the ownership of the sewer main was at

issue, K-Land could infer that the rights and regulations governing the use of such main would

also be at issue.  See id.

        In overturning the Appellate Division, the New Jersey Supreme Court drew a distinction

between "deliberate and calculated claim-splitting strategies" and an "innocent omission by an

uninformed litigant."  Id. at 70 (quoting Prevratil v. Mohr, 145 N.J. 180, 203, 678 A.2d 243

(1996) (Stein, J. dissenting)) (emphasis added).  The Supreme Court concluded that it would be

unfair to require K-Land to file a cross-claim because the suit sought only to clear title.

Moreover, K-Land could not have been on notice that the consent judgment would affect its right

to reimbursement because the consent judgment was not entered until after K-Land had

defaulted. Id. at 871.  Finally, the K-Land court observed that there was no prejudice to the K-

Land defendants because the suit on reimbursement would be "no more difficult or inconvenient

to defend against than if it had been asserted in the declaratory judgment action."  K-Land, 800

A.2d at 871-72.

**FOR PUBLICATION**

Plaintiff bears little resemblance to the <u>K-Land</u> plaintiff.  Unlike the <u>K-Land</u> plaintiff,

Murray was aware of the potential of a judgment that would implicate his ownership of the

M&M Assets.  The defendants in the state proceeding directly requested that the state court find

Murray never had any interest in Crystex.  Moreover, unlike <u>K-Land</u> where there was no risk of

prejudice to the other parties, defendants in this action would be clearly prejudiced by having to

relitigate issues surrounding the purchase of the M&M Assets, the formation of Crystex and the

related transactions.

Plaintiff's concern for judicial economy had he been forced to "speculate" as to the

"many possible outcomes" of the earlier proceeding is also misplaced.  There were only two

possible outcomes, both of which implicated Murray's claim of ownership to the M&M Assets.

Either Murray held an interest until the special hearing or he never held an interest.  That Murray

concedes he only has a claim to the M&M Assets in the latter case, (Pl.'s Opp'n 13.), only

strengthens the conclusion that it was unreasonable for Murray to fail to assert this claim.  When

faced with a 50-50 chance of the total loss of an asset to which parties claim full ownership, it

is unreasonable to fail to assert such claim.  Because Crystex plead in the alternative does not allow

Murray to reserve a claim that is clearly implicated by one of the alternatives.  Moreover, much

of the same ground covered in the state proceeding would be unearthed now in a trial involving

Murray's purported ownership of the M&M Assets.  Plaintiff's appeals to equity

notwithstanding, fairness and efficiency favor defendants.

**CONCLUSION**

Defendant's motion for summary judgment is granted.  Plaintiff's complaint is dismissed

with prejudice.

**FOR PUBLICATION**

**s/William H. Walls**
United States Senior District Judge


**Appearances**

Robert J. Basil, Esq.
Collier & Basil, P.C.
1270 Broadway
Suite 305
New York, NY 10001
        Attorney for Plaintiff

Robert George Kenny, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, Esqs.
40 Paterson Street
PO Box 480
New Brunswick, NJ 08903
        Attorney for Defendant